Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Courtney Stuart Alban (SBN 225513)
csalban@blakelylawgroup.com
Mark S. Zhai (SBN 287988)
mzhai@blakelylawgroup.com
Colby A. Meagle (SBN 328594)
cmeagle@blakelylawgroup.com
**BLAKELY LAW GROUP**
1334 Parkview Avenue, Suite 280
Manhattan Beach, CA 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Defendant*
*Affliction Holdings, LLC*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| H-D U.S.A., LLC and HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>AFFLICTION HOLDINGS LLC<br><br>Defendant.<br>AFFLICTION HOLDINGS LLC<br><br>Counter-claimants,<br><br>v.<br><br>H-D U.S.A., LLC and HARLEY-DAVIDSON MOTOR COMPANY GROUP, LLC,<br><br>Counter-Defendants. | CASE NO.: 2:20-cv-01642-VAP-MRW<br><br>**AFFLICTION HOLDINGS LLC'S COUNTERCLAIM, FOR:**<br><br>(1) **DECLARATORY RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Counterclaimants Affliction Holdings, LLC ("Affliction") hereby asserts the following counterclaims against Harley-Davidson Motor Company Group, LLC ("Harley-Davidson") (collectively "H-D"), as follows:

1

**AFFLICTION HOLDINGS LLC'S COUNTERCLAIMS FOR DECLARATORY RELIEF**

## NATURE OF THE ACTION

1. H-D's Second Amended Complaint ("SAC") is an improper attempt to curtail creative expression protected by the First Amendment of the United States and California constitutions, where all of H-D's "trademark claims" derive from Affliction's alleged use of unprotectible design elements within a greater expressive work.

2. Namely, H-D complains that Affliction uses coat-of-arms heraldry and the generic word "motor" as elements of design (hereafter, the "Design Elements") embedded within broader artistic works that are emblazoned on Affliction-branded apparel. H-D does not and cannot, however, own trademark rights in these ubiquitous Design Elements, and it must not be permitted to claim that it has a monopoly over them.

3. With H-D's improper and false claims hanging over its head, Affliction is operating "under a cloud" and cannot enjoy an unfettered right to design and sell clothing with an ornamental variation of a coat-of-arms, or the generic word "motor," neither of which design features are trademarks owned by H-D.

4. Even if H-D owned valid rights in the design features, which it does not, Affliction's use of the Design Elements on its branded clothing constitutes ornamental use that is neither designed, nor likely, to cause confusion with H-D, its trademarks, or its products.

5. Affliction thus seeks a declaration pursuant to 28 U.S.C. § 2201 that: (1) Affliction's use of coat-of-arms heraldry and/or the generic word "motor" as ornamental design features of original, artistic expression emblazoned on Affliction-branded apparel is protected by Affliction's constitutional rights to free expression, and that (2) Affliction's use of coat-of-arms heraldry and/or the generic word "motor," as ornamental design features of original, artistic expression emblazoned on a shirt is not likely to cause confusion and does not violate any of H-D's purported trademark rights.

**The Affliction Fashion Brand and its Protected Marks**

6. Affliction has been designing, manufacturing, and selling a wide range of men's and women's clothing and accessories since 2005.

7. The Affliction Mark has been held to be "arbitrary and to have both "conceptual" and "commercial" strength. *See Affliction Holdings, LLC v. Utah Vape or Smoke, LLC,* 935 F.3d 1112, 1115-16 (10th Cir. 2019) (Noting Affliction has $275 million in revenues over the past six years and has spent $3.2 million in advertising and marketing since 2009. Affliction's well-established mark is conceptually and commercially strong).

8. Affliction sells a wide range of clothing under its house mark AFFLICTION and under other trademarks that it owns as part of a family of marks, including without limitation AFFLICTION LIVE FAST, AMERICAN FIGHTER, REBEL SAINTS, SINFUL, THROWDOWN, all of which comprise the Affliction Brand.

9. Affliction was founded upon, and has become especially well known for its creative, screen-printed t-shirt designs. The creation and sale of artistic, screen-printed t-shirt designs with a certain edgy, artsy aesthetic is at the core of Affliction's business. The company's origin-story is that one of the co-founders, Courtney Dubar, purchased a screen printer, and he began designing and printing t-shirts in a shed in his parent's back garden. See https://en.wikipedia.org/wiki/Affliction_Clothing

10. The Affliction Brand, with its edgy, rock-and-roll inspired apparel and its "Live Fast" motto, resonates with followers of a variety of other disciplines and interests such as: rock and roll, tattoos, vintage Americana, impact sports, and relatedly motorcycle, or "moto," culture.

11. The Affliction Brand has been specifically associated with the Mixed Martial Arts ("MMA") community. Through its Signature series, Affliction has collaborated with many of the world's top-ranked MMA fighters and world-class boxers, including Cain Velasquez, Andrei Arlovski, Tyron Woodley, Edson Barboza,

1  Phil Davis, Josh Thomson, Randy Couture, Georges St-Pierre, Fedor Emelianenko,
2  Quinton Jackson, Renato Sobral, Shane Mosley, and Zab Judah, among others.

3      12.    Users who go to Affliction's consumer-facing website, located at
4  www.afflictionclothing.com (the Affliction Website), will find a blog there in addition
5  to clothing sold. The blog serves the purpose of allowing the company to engage with
6  its customers in a way that promotes their shared interests and creates a sense of
7  community.

8      13.    The Affliction Website blog posts feature topics designed to appeal to
9  Affliction's customers and potential customers, including, at the time of this writing:
10 Badass Tattoo Tips, How to Design a Tattoo, How to Wear Band T-Shirts, How to
11 Roll a Casual Rock Look, Killer Rock and Roll Outfits for the Ladies, Cool
12 Motorcycle Outfits, and Grunge Style: Fashion Breakdown.

13     14.    Upon information and belief, H-D does not sell any t-shirts with the type
14 of elaborate, stylized, creative, artistic, screen-printed designs, for which Affliction is
15 well known.

16     15.    Upon information and belief, based upon a review of H-D's website, all of
17 the t-shirts sold by H-D include the HARLEY DAVIDSON house mark, or the Bar&
18 Shield Logo, which, when used by H-D, is intentionally featured and placed in a
19 source-identifying size and location; namely, small, and on the breast pocket.

20     16.    Similarly, all of the Accused Products are clearly branded with
21 Defendant's Brand "Affliction®".

22     17.    None of the Accused Products contain the HARLEY DAVIDSON Mark,
23 or its Blank Bar & Shield Mark, or *any other* H-D Mark.

24     18.    The Design Elements about which H-D complains (a coat of arms and the
25 word moto) are not protectible elements of the H-D Marks.

26     19.    Nowhere does Affliction ever use a Mark that is identical, or confusingly
27 similar, to any of H-D's Marks.

28     20.    The Accused Products and the Design Elements instead have obvious

stylistic differences in design, coloring, size, shape, lettering, size, and placement.

21. The coat-of-arms Design Element derives in large part from heraldry, which upon information and belief, has its origins in the mid-twelfth century. Heraldic marks helped knights, who were often covered in armor, identify one another. Today, a heraldic mark in the shape of a shield is generally called a coat of arms and is commonly used in connection with trademarks. (*e.g.*, Chevron, British Petroleum, Porsche, UPS, U.S. Armed Forces, Warner Bros., NHL, NFL, etc.).

22. Upon information and belief, Plaintiffs are attempting to monopolize and are monopolizing relevant markets beyond the boundaries of any purported trademark rights they may have in an effort to gain an unfair competitive advantage.

23. Affliction's use of the Design Elements at issue is purely for aesthetic purposes. Upon information and belief, consumers recognize the Design Elements as components of a larger expressive work, and they appreciate them due to their aesthetic and informational appeal, not due to any source-identifying function.

24. This is certainly the case when every complained-of use of a Design Element is part of a larger work, emblazoned on the front of a t-shirt, which is consumers expect to see decorative art, and where the artwork is placed alongside the commercially and conceptually-strong AFFLICTION house mark.

### Affliction's Expressive Use of the Unprotectable Design Elements

25. The gravamen of H-D's Complaint is that Affliction has incorporated into artwork featured on its well-known fashion apparel: (i) a coat-of-arms design, and/or (ii) the generic word "motor" (hereafter, the "Design Elements").

26. As the claims alleged by H-D in the SAC reveal, the ubiquitous coat-of-arms design used by Affliction is noticeably different from the Bar and Shield Logo trademarks for which H-D claims protection.

27. The coat-of-arms design, moreover, exists in a crowded field of similar designs, such that consumers are accustomed to brands featuring variations of a coat-

of-arms as decorative features, especially when emblazoned as artwork on a t-shirt. The same is true for the generic word "motor."

28. H-D does not allege, because it cannot allege, that Affliction has used the coat-of-arms Design Element in connection with the words Harley and/or Davidson, or any other word or design properly claimed as a trademark owned by H-D.

29. H-D also does not allege, because it cannot allege, that Affliction has used the "Motor" Design Element in connection with the words Harley and/or Davidson, or any other word properly claimed as a trademark owned by H-D.

30. To the contrary, each of the uses about which H-D complains includes the of use of one of the Design Elements in connection with the well-known AFFLICTION trademark, not any mark owned by Harley Davidson. *See Cosmetically Sealed,* 125 F.3d at 30–31 (holding that the "non-trademark use" of the plaintiff's marks was evidenced by the fact that the source of defendant's apparel was clearly identified by the prominent display of defendant's own trademarks).

31. H-D must concede that the use of the AFFLICTION house mark in connection with the Design Elements represents an intent not to confuse and obviates any confusion that might otherwise have occurred, because H-D relies on this exact argument to defend itself against confusion claims alleged by others. *See, e.g, Bell v. Harley Davidson Motor Co., 539 F.Supp.2d 1249* (S.D.C.A. 2008) ("Harley–Davidson demonstrated its intent not to create confusion by including the Harley–Davidson name or bar- & -shield logo on every advertisement and piece of merchandise bearing the 'Ride Hard' phrase.").

32. H-D does not allege, because it cannot allege, that it owns trademark rights to the generic word, "motor." Motor is a short form of the generic word "motorcycle," which H-D has been expressly required to disclaim, and which it did disclaim, in public filings with the Patent and Trademark Office. *See e.g.,* Office Action Dated Oct. 23, 2005 Serial No. 78/656578 (requiring H-D to "insert a disclaimer of MOTORCYCLES in the application, which H-D did.).

33. H-D does not allege, because it cannot allege, that Affliction uses the Design Elements in a traditional, source-identifying capacity, such as on a hangtag for a shirt, or a small logo placed on a breast pocket. Rather, all of the uses about which H-D complains are uses of the Design Elements incorporated into a larger artwork, emblazoned on t-shirts, accompanied by Affliction's famous trademark, not H-D's.

34. H-D does not allege, because it cannot allege, that Affliction has ever used a "blank" coat-of-arms, without words or pictorial representations. *See generally* SAC. H&D's "Blank Bar & Shield Logo" (Reg. No.1511060) is expressly limited by the PTO to be a blank pictorial representation of a shield and bar "WITHOUT ANY WORDS(S)/ LETTER(S)/NUMBER(S)," "with neither a figurative element nor an inscription contained therein or superimposed thereon." None of the Accused Products in H-D's SAC uses a blank coat of arms.

### H-D Cannot Use the Lanham Act to Prevent Affliction's Free Expression, and There is No Possible Likelihood of Confusion.

35. H-D is mistaken that its alleged trademark rights allow it to "quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002). The Lanham Act protects the public's right not to be misled as to the *source* of a product; nothing more.

36. Under controlling Ninth Circuit law, the "only relevant legal framework for balancing the public's right to be free from consumer confusion" against First Amendment rights is the *Rogers* test. (*Twentieth Century Fox TV v. Empire Distrib., Inc.* (9th Cir. 2017) 875 F.3d 1192 (citing *Brown v. Elec. Arts, Inc.,* 724 F.3d 1235, 1242 (9th Cir. 2013).)

37. The "low threshold" for applying the *Rogers* test is whether the allegedly infringing use is contained within an "expressive work." *See Brown v. Electronic Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013).

38. Affliction's fashion line qualifies as an "expressive work," because the "development and design of creative works is subject to First Amendment protection." (*See Tierney v. Moschino S.p.A.* (C.D.Cal. Jan. 13, 2016, No. 2:15-cv-05900-SVW-PJW) 2016 U.S.Dist.LEXIS 195333, at *17-19) (holding defendants' "fashion line satisfies this low threshold showing.").

39. The Court therefore must evaluate H-D's claims under the *Rogers* test, not the Lanham Act's likelihood of confusion analysis.

## The *Rogers* Test

40. Affliction's use of the Design Elements has "artistic relevance" to its underlying work sufficient to pass the first prong of the *Rogers* test, which the Ninth Circuit has explained requires a "level of relevance [that] merely must be above zero." *E.S.S.*, 547 F.3d at 1100.

41. Affliction has incorporated the Design Elements into original artwork on its apparel, always in connection with its widely-known house mark, always as constituent elements of more elaborate artistic designs, because the Design Elements are aesthetically pleasing and appeal to a certain edgy aesthetic popular with Affliction's customers for reasons that have nothing to do with H-D or with the source-identifying functions of trademarks.

42. The second *Rogers* prong requires that works not be "explicitly mislead[ing] as to the source or the content of the work" in order to qualify for protection under the First Amendment. Rogers, 875 F.2d at 999. In evaluating whether a work "explicitly misleads" consumers, courts ignore misunderstandings that are "not the result of explicit misstatement" or "not engendered by an overt claim in the title." Id. at 1001.

43. The Ninth Circuit has found that consumers are not likely to mistake the use of someone else's mark in an expressive work for a sign of association, authorship, or endorsement, and they have emphasized that "courts of California have interpreted

this piece of the defendant's threshold showing rather loosely." *See Twentieth Century Fox TV v. Empire Distrib., Inc.* (9th Cir. 2017) 875 F.3d 1192, 1196-97.

44. The Accused Products do not say anything about H-D, let alone "overt[ly] claim" H-D's involvement in Affliction's designs. To the contrary, Affliction's use of the Design Elements on the Accused Products is classic ornamental/ decorative use, and the Design Elements do not serve a source-identifying function as a matter of law.

45. Affliction's use of the Design Elements on the Accused Products in no way misleads consumers as to the source or the content of the work and thus meets the second prong of the *Rogers* test.

46. H-D's "trademark claims" in the SAC are not subject to a likelihood of confusion analysis, and the Lanham Act does not apply, because the Design Elements have artistic relevance within a body of expressive work, and their usage does not explicitly mislead consumers as to the source or the content of the work. *See E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008);

47. Affliction's use of the Design Elements on the Accused Products does not mislead consumers as to the source or the content of the work, and there is no possible likelihood of confusion with H-D's products or trademarks for the same reasons.

## COUNT ONE-DECLARATORY JUDGMENT
## REGARDING FEDERAL TRADEMARK INFRINGEMENT
(28 U.S.C. §§ 2201 et seq. and 15 U.S.C. § 1125(a))

48. Affliction repeats and realleges each allegation contained in paragraphs 1 through 46 of this complaint as if fully set forth herein.

49. The claims alleged by H-D in the SAC place a cloud over Affliction's freedom of expression and its ability to incorporate common artistic design elements whose edgy, risk-taking aesthetic appeals to its customers, into its expressive, branded apparel.

50. There now exists between the parties an actual and justiciable controversy concerning the parties' respective rights.

51.     The aforesaid declaration is necessary and appropriate at this time so that Affliction may continue to create expressive works and exercise its free speech rights without the specter of litigation hanging over its head.

52.     Affliction has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Affliction prays for a judgment against defendant as follows:

A. For a declaration that Affliction's use of the Design Elements as outlined in the SAC is protected expression that does not:
  i. Infringe, dilute, or otherwise violate any of defendant's trademark rights;
  ii. Violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);
  iii. Violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(c);
  iv. Violate California Business and Professions Code §§ 17200 et seq.;
  v. Violate any applicable common law or statutory unfair competition
B. For Affliction's attorney fees and costs incurred; and
C. For such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Affliction hereby demands a trial by jury.

Dated:     September 17, 2020     BLAKELY LAW GROUP

By:     /s/ Brent H. Blakely
Brent H. Blakely
Courtney Stuart-Alban
Mark S. Zhai
Colby A. Meagle
**Attorneys for Defendant**
**Affliction Holdings LLC**